2008 WY 88

NORTHFORK CITIZENS FOR RESPON-
SIBLE DEVELOPMENT; David Jami-
son, an individual; and Robert Hoszwa,
an individual, Appellants (Petitioners),

v.

PARK COUNTY BOARD OF COUNTY
COMMISSIONERS, Appellee
(Respondent),

and

Worthington Group of Wyoming, LLC,
Appellee (Intervenor/Respondent).

No. S–07–0258.

Supreme Court of Wyoming.

July 29, 2008.

Representing Appellants: Anthony Todd Wendtland and Debra J. Wendtland, Wendtland & Wendtland, LLP, Sheridan, Wyoming. Argument by Ms. Wendtland.

Representing Appellee, Park County Board of County Commissioners: Bryan A. Skoric, County Attorney and James F. Davis, Deputy County Attorney, Park County Attorney's Office, Cody, Wyoming. Argument by Mr. Davis.

Representing Appellee, Worthington Group of Wyoming, LLC: Dawn Rae Scott and Laurence W. Stinson, Bonner Stinson, PC, Powell, Wyoming. Argument by Mr. Stinson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] In a series of administrative decisions, the Park County Commissioners approved plans by Worthington Group of Wyoming, LLC, to develop a residential subdivision known as Copperleaf. Northfork Citizens for Responsible Development, David Jamison, and Robert Hoszwa sought judicial review. On Worthington's motion, the district court dismissed the petition for judicial review on the basis that Northfork, Mr. Jamison, and Mr. Hoszwa lacked standing. On appeal, we conclude that they do have standing, and so reverse the district court's decision.

### ISSUE

[¶ 2] The sole issue is whether Northfork, Mr. Jamison, and Mr. Hoszwa have standing to obtain judicial review of the County's decisions approving the Copperleaf subdivision.

### FACTS

[¶ 3] In 2004, Worthington's predecessor in interest began seeking approval to develop the Copperleaf subdivision on property along the north fork of the Shoshone River in Park County, Wyoming. It proposed to develop 155 residences on approximately 550 acres. Of those residences, 131 are planned as single family homes on lots ranging from 1.1 to 2.6 acres,[1] and twelve are planned as duplexes with 24 total housing units on twelve acres designated as "Tract F." A large portion of the remaining acreage is proposed for open space, with additional acreage dedicated to uses such as roads and utilities.

[¶ 4] Mr. Jamison and Mr. Hoszwa own and live on property adjoining Copperleaf. More specifically, their property is adjacent to Tract F, the area where Worthington proposes to develop duplexes. Northfork is a Wyoming nonprofit corporation that purports to represent a number of Park County residents, including Mr. Jamison and Mr.

---

1. Different numbers are given in the record, but it appears that the lots range in size from 1.1 or 1.2 acres to either 1.8, 2.3, or 2.6 acres.

Hoszwa. The organization opposes the development of Copperleaf as proposed by Worthington, and has expressed its concerns vigorously on numerous occasions.

[¶ 5] Park County has established administrative requirements and procedures for obtaining approval of a subdivision. Details of how Worthington worked through the process are not pertinent at this stage, and it is sufficient to note that the County approved Worthington's proposal for Copperleaf. Northfork, Mr. Jamison, and Mr. Hoszwa appealed to the district court for judicial review of the subdivision's approval. Worthington filed a motion to dismiss, asserting that Northfork, Mr. Jamison, and Mr. Hoszwa lacked standing to maintain their appeal. The district court granted the motion, and Northfork, Mr. Jamison, and Mr. Hoszwa seek our review of that decision.

### STANDARD OF REVIEW

[¶ 6] "The existence of standing is a legal issue that we review *de novo.*" *Halliburton Energy Services v. Gunter,* 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo.2007).

### DISCUSSION

[¶ 7] Northfork, Mr. Jamison, and Mr. Hoszwa seek judicial review of an administrative agency decision pursuant to Wyoming's Administrative Procedure Act, which provides in part that

any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court.

Wyo. Stat. Ann. § 16–3–114(a) (LexisNexis 2007). If Northfork, Mr. Jamison, and Mr. Hoszwa are "aggrieved or adversely affected in fact" by the decisions of the Park County Commissioners, then they have standing to maintain their appeal.

[¶ 8] In the parties' briefs, Northfork is variously described as a nonprofit corporation, an association, and an organization. The Wyoming Administrative Procedure Act includes corporations, associations, and organizations within the definition of a "per-

son" who may seek judicial review. Wyo. Stat. Ann. § 16–3–101(b)(vii). Northfork contends that, as an association or organization, it has standing if one or more of its members can establish standing. *See International Ass'n of Fire Fighters, Local No. 279 v. Civil Service Comm'n of Fire Department of City of Cheyenne,* 702 P.2d 1294, 1298 (Wyo.1985) (Thomas, C.J., specially concurring) (citing *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Northfork's standing as an association could be better established if the record more clearly indicated the nature of the relationship between Northfork and the people it purports to represent. The parties' briefs tell us only that Mr. Jamison and Mr. Hoszwa are "members" of Northfork, that Northfork "includes" Mr. Jamison and Mr. Hoszwa, and that Northfork is "comprised of" Mr. Jamison, Mr. Hoszwa, and others. However, the County and Worthington appear to concede that Northfork has standing if Mr. Jamison and Mr. Hoszwa have standing. Accordingly, we proceed to consider whether those two individuals have standing.

[¶ 9] Standing under the Wyoming Administrative Procedure Act has been explained this way:

An aggrieved or adversely affected person is one who has a legally recognizable interest in that which will be affected by the action. *Hoke v. Moyer,* 865 P.2d 624, 628 (Wyo.1993). A potential litigant must show injury or potential injury by "alleg[ing] a perceptible, rather than a speculative, harm resulting from the agency action." *Foster's, Inc. v. City of Laramie,* 718 P.2d 868, 872 (Wyo.1986). "The interest which will sustain a right to appeal must generally be substantial, immediate, and pecuniary. A future, contingent, or merely speculative interest is ordinarily not sufficient." *L Slash X Cattle Company, Inc. v. Texaco, Inc.,* 623 P.2d 764, 769 (Wyo.1981).

*Roe v. Board of County Comm'rs, Campbell County,* 997 P.2d 1021, 1023 (Wyo.2000). More specifically, in the context of zoning and land use law, we have stated that

an aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest that is or will be affected by the action of the zoning authority in question. An individual having standing must have a definite interest exceeding the general interest in community good shared in common with all citizens. *Hoke*, 865 P.2d at 628 (quoting E.C. Yokley, 4 *Zoning Law and Practice* § 24–3 at 194 (4th ed. 1979) (footnote omitted)).

[¶ 10] Mr. Jamison and Mr. Hoszwa emphasize the fact that they own and live on property adjoining Copperleaf. They rely on cases holding that landowners have standing to appeal land use decisions that result in the doubling of density on adjoining property. In *Hoke,* we stated as follows:

> Doubling the density of adjacent property raises a number of perceptible harms for a property owner which are different than the harm to the general public, such as increased traffic and congestion; therefore, [the adjacent landowner] was entitled to judicial review of the board's action by the district court and now by this court.

865 P.2d at 628. We have also "held that an adjoining landowner has standing when the effect of the board's decision will be to double the density previously permitted." *Hirschfield v. Board of County Comm'rs of County of Teton,* 944 P.2d 1139, 1143 (Wyo.1997).

[¶ 11] The County and Worthington contend that the approved development plan for Copperleaf does not double the housing density on the property. Under the plan, single family homes will be built on property that was previously zoned for a density of one house per five acres.[2] Worthington opted for what the County regulations call a "grouped-lot" plan, which means that the houses are clustered on smaller lots, while more open space is preserved. Copperleaf proposes to build houses on lots of approximately one to two acres in size, and a little more than half of the subdivision property will be devoted to open space. Thus, according to the County and Worthington, Copperleaf's grouped-lot plan changes the configuration of the houses,

but with no appreciable increase in the total number of houses. Because the increase in housing density is minimal, the County and Worthington assert that Mr. Jamison and Mr. Hoszwa cannot rely on *Hoke* and *Hirschfield* to assert their standing.

[¶ 12] The district court apparently agreed with the County and Worthington. It found that Mr. Jamison and Mr. Hoszwa are adjacent landowners, but ruled that they had not "presented specific facts that demonstrate how they have been injured by the [County's] decision to approve the Copperleaf Subdivision." Consequently, the district court concluded that this case was

> similar to the situation in *Roe v. Board of County [Commr's of Campbell County]*, 997 P.2d 1021 (Wyo.2000), wherein the Roes did not present specific facts to demonstrate how they have been injured by the board's decision to approve [the] Subdivision.

*Roe*, however, is readily distinguishable from the present case. For one thing, the Roes never alleged that they were adjacent landowners. For another, the zoning decision they wanted to appeal resulted in a substantial decrease in housing density on the property, and the Roes failed to plead any facts indicating how the decrease in housing density would harm them in any way. In contrast, Mr. Jamison and Mr. Hoszwa have expressly asserted that they are adjacent landowners, and in at least two respects they have presented specific facts establishing how they are aggrieved and adversely affected by the County's approval of Copperleaf.

■ [¶ 13] First, while Copperleaf's plans may not increase housing density for single family houses, there is a portion of the subdivision, referred to as "Tract F," on which Worthington proposes to build twelve duplex houses. Worthington's predecessor in interest obtained approval in 1985 to develop duplexes on Tract F. Mr. Jamison and Mr. Hoszwa cite Park County Zoning Resolution 3–210F.1, which provides that "land use changes granted for developments which

2. The record is unclear on this point, but some portion of the property may have been zoned for one house per thirty five acres. This would make no difference in our analysis, so we need not resolve the confusion.

have been abandoned, inactive, or not substantially advanced for 5 years from the effective date of this zoning resolution are deemed expired." Under this provision, they contend, the County's 1985 approval of duplexes on Tract F has expired, and the approved housing density reverted back to the level of one house per five acres. On this basis, they assert that the County's approval of twelve duplexes on twelve acres results in a very substantial increase in the allowed housing density on Tract F. Significantly, Tract F is immediately adjacent to the properties owned by Mr. Jamison and Mr. Hoszwa. Based on *Hoke* and *Hirschfield*, Mr. Jamison and Mr. Hoszwa maintain that these assertions establish their standing to appeal the County's decisions approving Copperleaf. We agree.

[¶ 14] It is coincidence, we think, that *Hoke* and *Hirschfield* both discuss a doubling of housing density. The real lesson of those cases is that adjoining landowners have standing to appeal land use decisions that result in a substantial increase in the allowed housing density. Doubling the density is but one example of a substantial increase sufficient to support standing. It is undisputed that Mr. Jamison and Mr. Hoszwa are adjoining landowners. If they are correct in their legal contention that the County's 1985 approval of duplex development has expired,[3] then the County's decisions approving Copperleaf will result in a substantial increase in housing density on Tract F. Mr. Jamison and Mr. Hoszwa therefore have standing to appeal those decisions.

[¶ 15] Second, regardless of housing density, Mr. Jamison and Mr. Hoszwa claim that Copperleaf violates other County requirements. They cite, for example, Park County Zoning Resolution 2–615E.3, establishing certain requirements for open space in a grouped-lot plan:

> A minimum of 50 percent of the acreage of the parent parcel shall be open space *configured as a separate parcel* owned and

managed by a homeowners' association or other entity *or as a contiguous area* comprised of portions of individual building lots restricted against development by a conservation easement.

(Emphasis added.) Mr. Jamison and Mr. Hoszwa concede that the Copperleaf plan sets aside more than half of the subdivision's acreage for open space, but they contend that the open space is neither a separate parcel nor a contiguous area. They have described the Copperleaf open space as

> a far cry from what the County regulations require and the Wyoming Game and Fish encouraged. Instead of establishing contiguous open space ... the Developer created multiple small isolated pockets and areas that are "connected" by roads and then just called those areas and the roads "open space".

[¶ 16] According to Mr. Jamison and Mr. Hoszwa, because the Copperleaf open space does not comply with the County's requirements, the subdivision will cause them more significant harm. In particular, they have complained of interference with their scenic views and adverse impacts on wildlife habitat and migration. To establish standing based on these contentions, Mr. Jamison and Mr. Hoszwa must demonstrate a "definite interest exceeding the general interest in community good shared in common with all citizens." *Hoke*, 865 P.2d at 628. While the general public may have a broad interest in preserving views and protecting wildlife, Mr. Jamison and Mr. Hoszwa contend that the subdivision will affect them more adversely than the general public because they own and live on property adjoining Copperleaf. We agree that their interests in preserving views from their homes, and their interests in observing and enjoying wildlife on their own properties, do exceed the general public's interest in community good. We therefore conclude that Mr. Jamison and Mr. Hoszwa have presented facts sufficient to

---

3. The County and Worthington dispute the contention that the 1985 approval of duplex development has expired. In reviewing an order granting a motion to dismiss, however, we do not attempt to resolve such disputes. Rather, we

accept as true the facts presented by the parties opposing dismissal. *Cook v. Card*, 2007 WY 178, ¶ 8, 170 P.3d 122, 124 (Wyo.2007); *Veile v. Board of County Comm'rs of Washakie County*, 860 P.2d 1174, 1177 (Wyo.1993).

establish that they are aggrieved or adversely affected by the County's decisions.

[¶ 17]   As noted above, because Mr. Jamison and Mr. Hoszwa have established standing in this case, Northfork also has standing. Accordingly, we find error in the district court's order dismissing their appeal.   We reverse that decision, and remand the case to the district court for further proceedings consistent with this opinion.